## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. 13-20126-CM |
| | ) |
| ALFREDO RODRIGUEZ, | ) |
| | ) |
| Defendant. | ) |
| ————————————————— | ) |

## MEMORANDUM AND ORDER

Defendant was convicted by a jury on September 24, 2014 of conspiracy to distribute five kilograms or more of cocaine.  The jury acquitted defendant of witness tampering.  This matter comes before the court on defendant's Motion for New Trial (Doc. 49).  Defendant argues that the weight of the evidence was insufficient to find him guilty of conspiracy to distribute cocaine.

### I.      Standard

In considering a motion for new trial, the court has broad discretion.  *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987) (citation omitted).  Federal Rule of Criminal Procedure 33 provides that a court may grant a new trial "if the interest of justice so requires."  Additionally, any error that would require reversal may justify a new trial.  *United States v. Walters*, 89 F. Supp. 2d 1206, 1213 (D. Kan. 2000) (citation and quotation marks omitted).  The court may weigh the evidence and assess witness credibility.  *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999) (citation omitted).  A new trial is warranted if, "after weighing the evidence and the credibility of the witnesses, the court determines that 'the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred.'"  *United States v. Gabaldon*, 91 F.3d 91, 93–94 (10th Cir. 1996) (quoting *United States v. Evans*, 42 F.3d

586, 593 (10th Cir. 1994)).  But courts disfavor new trials, *United States v. Gleeson*, 411 F.2d 1091, 1093 (10th Cir. 1969) (citation omitted), and exercise great caution in granting them, *United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997) (citation omitted).

Defendant claims that the evidence presented at trial was insufficient to support his conviction.  "Evidence is sufficient to support a conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government."  *United States. v. Mains*, 33 F.3d 1222, 1227 (10th Cir. 1994).  The court may not examine the evidence in bits and pieces but rather must consider "the collective inferences to be drawn from the evidence as a whole."  *United States v. Hooks*, 780 F.2d 1526, 1532 (10th Cir. 1986).

## II.    Analysis

Defendant argues that the evidence was insufficient to support a conviction for conspiracy to distribute cocaine.  To obtain a conspiracy conviction, the government must prove: (1) an agreement to violate the law; (2) defendant's knowledge of the conspiracy's objective; (3) defendant's knowing and voluntary participation; and (4) interdependence.  Tenth Circuit Criminal Pattern Jury Instruction 2.19; *see also United States v. Keck*, 643 F.3d 789, 794 (10th Cir. 2011) (citations omitted).  These elements may be proven by direct or circumstantial evidence.  *See United States v. Evans*, 970 F.2d 663, 668 (10th Cir. 1992) (citing *United States v. Andrews,* 585 F.2d 961, 964 (10th Cir. 1978)).

In this case, the evidence presented at trial was sufficient to establish that defendant was a member of a cocaine distribution conspiracy.  At trial, the government presented four cooperating witnesses: Daniel Bryant, Gregory Moore, Jacquel Cunningham, and Marcus Williams, each of whom provided details of drug trafficking activities that directly linked this

defendant to the conspiracy charged.   The government also presented two other cooperating witnesses, Lamar Brooks and Brenton Bassett, who provided testimony regarding transactions involving the defendant's customers, Moore and Bryant.  In requesting a new trial, defendant asks that the court consider the fact that these cooperators "were faced with long sentences of imprisonment, and were hoping for substantial reductions in their sentences for testifying against defendant."  (Doc. 49 at 5.)  However, these cooperating witnesses each testified that they (1) had been made no promises regarding sentence reductions, (2) understood that a reduction would only be based on truthful testimony, and (3) did not know the amount of a reduction that could result, if any.  Moreover, the government presented evidence that sufficiently corroborated each of the cooperating witnesses' testimony, including defendant's telephone activity, home surveillance camera footage that included images of defendant, and evidence related to defendant being robbed of cocaine.

Defendant points out that the factual bases contained in these cooperating witnesses' plea agreements never mentioned him.  The court notes that the two plea agreements admitted into evidence (Moore and Bryant) were dated April 16, 2013 and June 25, 2013, yet defendant was not charged or arrested until December 2013.  Detective Joseph Daneff and Special Agent Ryan Williams testified that these cooperators had discussed this defendant during their early proffers but that the investigation of defendant was ongoing.  As such, it would have been unwise for the government to alert defendant—the target of an ongoing investigation—that investigators were aware of his identity and drug trafficking activities prior to his indictment and arrest.  The cooperating witnesses testified that they had discussed this defendant with investigators during their early proffers and confirmed that not everything that occurred was contained in their plea

agreement.  The fact that defendant was not mentioned in these cooperating witnesses' plea agreements does not justify granting defendant's motion.

Defendant also points out that, of the more than 20,000 phone calls that were recorded during wiretaps of defendant's co-conspirators, defendant never "showed up" on a single phone call, nor was he mentioned by name or ethnicity.  (Doc. 49 at 3.)  At trial, the cooperating witnesses testified they refrained from using names or identifiers in the drug trafficking world to avoid detection.  In fact, Moore testified that he purposely did not use identifying information on the telephone and spoke in code out of fear that the police were monitoring his phones.  Moreover, that defendant did not "show up" on a wire-tapped phone call does not mean there was insufficient evidence for a conspiracy conviction.  In *United States v. Dodd*, a case upon which defendant relies, the Eight Circuit upheld a district court's grant of a new trial based, in part, on the fact that the government "found not a single call linking Dodd to any of the conspirators."  391 F.3d 930, 935 (8th Cir. 2004).  However, this fact was deemed important because the government had claimed no phones associated with Dodd were ever confiscated, which the court pointed out "raise[d] a question as to the whereabouts of the cellular phone Dodd was 'holding . . . to his face' when he was arrested."  *Id.* at 935 (citing trial transcript).

More importantly, unlike the facts in *Dodd*, there are phone records linking this defendant to the conspiracy.  For example, there was evidence of defendant's telephone activity with co-conspirator Frank Piper (whose telephone was not subject to a wire-tap) immediately after an intercepted call where Piper and Moore (whose telephone was subject to a wire-tap) were discussing Piper contacting his cocaine source.  After the intercepted call, there was a series of telephone calls between Piper and defendant, as shown by telephone records establishing that the calls were placed, though not recorded.  As such, even though defendant may have never

shown up on a recorded telephone conversation or his voice otherwise intercepted, defendant's telephone records established defendant's contacts with Piper—a major player in the conspiracy—during the time Piper was looking for cocaine, and this fact was corroborated by the cooperating witnesses' testimony and the recorded phone interceptions.  While defendant's attorney argued at trial that these calls—many of which took place in the evening—related to defendant's home remodeling business, the jury apparently believed otherwise.

Indeed, defendant claims that he was "heavily" involved in remodeling projects with Piper rather than drug trafficking.  (Doc. 49 at 4.)  However, the evidence at trial established that defendant frequently met with co-conspirators at Piper's secluded property.[1]  Then, when aerial surveillance was utilized immediately before Piper's arrest, defendant's vehicle was observed at Piper's residence.  Defendant was also captured on Piper's home surveillance camera visiting Piper's home.  Defendant concedes he was video-taped at Piper's residence just days before Piper's arrest, yet defendant himself testified that he was not working on any jobs for Piper at the time of Piper's arrest.  As such, defendant's claim—that his communications with Piper were only about remodeling—is against the weight of the evidence, including defendant's own testimony.

The defendant also argues that "despite the fact that Piper's home surveillance system recorded the comings and goings of everyone visiting him, defendant was seen on camera only once . . . ."  (Doc. 49 at 5.)  During trial, Special Agent Williams testified that Piper's home surveillance camera contained recordings for only a period of weeks and thus did not retain footage for most of the conspiracy timeframe.  Moreover, while defendant appeared on the surveillance camera only once during the period retained on the home surveillance system, he appeared during the timeframe that cooperating witnesses testified Piper obtained a new supply

---

[1] The agents testified regarding the difficulty in conducting effective surveillance of Piper's property.

of cocaine.  And even though defendant did not visually appear to have drugs on him either entering or leaving Piper's residence, the government also elicited testimony that a kilogram of cocaine was roughly the size of a tissue box and could easily be concealed inside defendant's coat.  The court also recalls the video showing that defendant was not dressed in work clothes or carrying any tools or materials, nor did defendant stay at Piper's residence long enough to conduct any remodeling activity, which is further consistent with defendant's testimony that he was not working for Piper at the time.

Defendant claims that he was engaged "full time in the remodeling and repair of houses" and that his business was not a "front" for drug dealing.  (Doc. 49 at 4.)  In support, defendant points to two of his witnesses at trial who testified that defendant was consistently on the job from early in the morning to late afternoon or early evening.  However, these facts do not contradict defendant's involvement in drug trafficking because the government never contended at trial that defendant was *only* a drug supplier.   There was evidence presented at trial that defendant engaged in both home remodeling and supplying cocaine to individuals, some of whom he had gotten to know while working on his remodel projects.

Defendant next points to his lack of assets as supporting his claim that there was insufficient evidence for a conviction.   The court recognizes that, unlike some of his co-conspirators, defendant did not own any rental houses.  However, this fact does not mean the evidence is insufficient to support a guilty verdict.  The government presented evidence that defendant had a residence and three high-end vehicles[2] in his wife's name even though they reported a gross annual income of only $37,845 on their taxes.  Moreover, the government presented evidence that defendant suffered a significant loss in 2012 when he was robbed of two

---

[2] Defendant installed expensive custom wheels on each of these three vehicles, which included a Lincoln, a Jaguar, and a Suburban.

kilograms of cocaine at gunpoint.  Defendant's loss of $50,000 to $60,000 could explain why he was not living a lavish lifestyle.  Ultimately, defendant's apparent lack of extravagance is not grounds for a new trial.

In sum, the evidence presented during the trial included the testimony of four witnesses who detailed their direct involvement with the defendant in drug trafficking activities, as well as evidence related to the drug robbery, defendant's telephone activity, and surveillance camera evidence corroborating each of the witnesses' testimony.   Having considered all the evidence and reasonable inferences to be drawn, the court concludes that there is sufficient evidence supporting the conspiracy verdict against defendant—that he knowingly and voluntarily participated in the drug conspiracy, knowing its objectives and acting interdependently with at least several of the other participants.  *See United States v. Ramirez*, 348 F.3d 1175, 1182 (10th Cir. 2003).  The court denies defendant's motion for a new trial.

**IT IS THEREFORE ORDERED** that defendant's Motion for New Trial (Doc. 49) is denied.

Dated this 21st day of January, 2015, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**