**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

ALFREDO RODRIGUEZ,

    Defendant.

Case No. 13-20126-CM (Criminal)
17-2123-CM (Civil)

## MEMORANDUM AND ORDER

This matter is before the court on defendant Alfredo Rodriguez's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person In Federal Custody (Doc. 78) and defendant's Petition to Compel the Government to Provide Discovery Under Rules (A) of and the Rules Governing § 2255 Proceedings (Doc. 86). Defendant claims his attorney provided ineffective assistance of counsel during plea negotiations and at trial.

### I. Background

On December 18, 2013, defendant was indicted on a single-count of conspiring to manufacture, possess with intent to distribute, and to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846. The indictment itself included the penalties, which for this specific charge were "NLT 10 years NMT life imprisonment." (Doc. 1, at 3.) At the initial appearance, the court explained the charges and penalties to defendant through an interpreter. (Doc. 4, at 1.) On August 27, 2014, the government filed a superseding indictment adding a charge of witness tampering in violation of 18 U.S.C. §§ 1512(b)(1)–(3). This indictment also included the penalties for each charge, and the penalties were explained to defendant during the arraignment on September 4, 2014. (Doc. 31, at 1.) Defendant's trial began on September 15, 2014. Defendant testified in his defense on September 23, 2014. On September

-1-

24, 2014, the jury returned a verdict of not guilty as to Count Two and guilty as to Count One. This court sentenced defendant to 121 months imprisonment and five years of supervised release.

Defendant filed a direct appeal in the Tenth Circuit Court of Appeals, arguing there was insufficient evidence to support his conviction. The Tenth Circuit affirmed defendant's conviction on January 12, 2016. Defendant then timely filed the present motion.[1]

## II. Legal Standards

Defendant argues that his counsel provided ineffective assistance during the pretrial phase and at trial. The court applies the standard identified in *Strickland v. Washington*, 466 U.S. 668 (1984), when determining whether a habeas petitioner's counsel provided ineffective assistance. *See Romano v. Gibson*, 278 F.3d 1145, 1151 (10th Cir. 2002) (applying *Strickland*). Under *Strickland*, a petitioner bears the burden of satisfying a two-pronged test in order to prevail. First, he must show that his attorney's "performance was deficient" and "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. The court affords considerable deference to an attorney's strategic decisions and will "indulge in a strong presumption" that counsel's performance was not deficient. *Welch v. Workman*, 639 F.3d 980, 1010 (10th Cir. 2011) (quoting *Strickland*, 466 U.S. at 689). Counsel's performance is deficient if it falls "below an objective standard of reasonableness . . . [based on] prevailing professional norms." *Strickland*, 466 U.S. at 688. To prove ineffective assistance of counsel, the petitioner must show "that counsel did not exercise the skill, judgment and diligence of a reasonably competent defense attorney," *United States v. Voigt*, 877 F.2d 1465, 1468 (10th Cir. 1989), and that counsel's decisions were "completely unreasonable, not merely wrong," *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (citing *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997)). The reasonableness standard is

---

[1] The court is mindful of defendant's pro se status and liberally construes his pleadings. *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("Finally, because [defendant] appears pro se, we must construe his arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate.").

purposefully and necessarily broad, for "[n]o particular set of detailed rules" would encompass all possible scenarios that an attorney might face. *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009).

Under the second prong of *Strickland*, a habeas petitioner must demonstrate prejudice, which requires a showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* But, despite the existence of two prongs, "there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the [petitioner] makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

A court must grant an evidentiary hearing on a § 2255 motion "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. No evidentiary hearing is required "where the factual matters raised by the defendant's § 2255 petition may be resolved on the record before the court." *United States v. Walters*, 333 F. Supp. 2d 1022, 1028 (D. Kan. 2004) (citing *United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988)).

### III. Analysis

Defendant sets forth three allegations to support his argument that his counsel was ineffective. First, defendant claims his counsel was ineffective for failing to inform and discuss with him the "safety valve" provisions of the United States Sentencing Guidelines. Second, defendant claims his counsel failed to inform him that he faced a mandatory minimum of ten years in prison and that had he known about the mandatory minimum, he would have accepted a plea deal from the government. And finally, defendant argues his counsel was ineffective during trial by not objecting to the use of transcripts of phone calls during jury deliberation and for failing to subpoena the officers and agents who prepared the

transcripts in order to ensure their accuracy. Defendant insists that these errors, when considered cumulatively, require that this court grant his petition.

*a. Safety Valve Provision*

Defendant first claims that his attorney was ineffective because he failed to inform him of the safety valve provision in the Sentencing Guidelines. He believes he was prejudiced because he was not able to take advantage of a provision that would have reduced his mandatory minimum sentence.

Under 18 U.S.C. § 3553(f), a court shall impose "safety-valve relief by sentencing a defendant under the United States Sentencing Guidelines Manual . . . 'without regard to any statutory minimum sentence.'" *United States v. Herrera-Zamora*, 647 F. App'x 855, 857 (10th Cir. 2016). If a defendant satisfies all of the criteria for safety valve relief, he is entitled to a two-level reduction in his base offense level pursuant to U.S.S.G. § 5C1.2(a). A defendant is safety valve eligible only if:

> (1) the defendant does not have more than one criminal history point; (2) the defendant did not use violence or a credible threat thereof or possess a dangerous weapon in the commission of the crime; (3) the offense did not result in anyone's death or serious injury; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense; and (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the government all information and evidence the defendant has concerning the offense.

*Deltoro-Aguilera v. United States*, 625 F.3d 434, 437 (8th Cir. 2010).

In the present case, defendant has not made a showing that he was eligible for the safety valve reduction. After a brief review of the Presentence Investigation Report, the court can tentatively determine that defendant likely met four out of the five criteria. But defendant has not shown that he met the requirement to "truthfully provide to the government all information and evidence [he] has concerning the offense." *Id.* Defendant argues that had he known that disclosure may have made him eligible for a two-level reduction, he would have "provided a full account of his involvement to the Government during the pretrial proceedings." (Doc. 79, at 6.)

The Tenth Circuit has found that "[t]he scope of disclosure required [for safety-valve relief] is very broad," and a "defendant's disclosure . . . 'must not merely be truthful but also complete.'" *Id.* The defendant must provide information "as to 'the offense of conviction and all relevant conduct' . . . which 'comprises more, often much more, than the offense of the conviction itself, and may include uncharged and even acquitted conduct.'" *Id.* The fact that defendant has "no relevant or useful other information to provide or that the Government is already aware of the information," does not preclude application of the safety valve provision. U.S.S.G. § 5C1.2.

In a case with facts nearly identical to the present case, the Tenth Circuit held that a defendant had not met his burden to show his counsel was ineffective for failing to inform him of the safety valve provision. *See United States v. Contreras-Castellanos*, 191 F. App'x 773, 777 (10th Cir. 2006). In *Contreras-Castellanos*, the defendant argued his counsel was ineffective for failing to make him aware of the safety valve provision, and that he was prejudiced because had he known about the provision, he would have provided a "complete and truthful disclosure as to all the facts required to meet the statutory requirements." *Id.* The Tenth Circuit found that even if his counsel's failure to advise him of the safety valve provision was constitutionally deficient, the defendant had not shown how he was prejudiced because he did not explain what specific information he would have disclosed. *Id.* (finding, ". . . Contreras-Castellanos has not shown how he was prejudiced by the lack of opportunity to attempt to qualify for the reduction. Contreras-Castellanos does not explain *what* information he would have disclosed in order to satisfy the provision.") (emphasis in original.) Importantly, the court noted that the defendant had testified at trial that he was not involved in drug trafficking activities. *Id.* Therefore, had defendant attempted to qualify for the safety valve provision, he would have had to truthfully provide to the government all information and evidence he had concerning the offense. *Id.* Because a jury found him guilty—despite his trial testimony—the defendant would have either had to admit he perjured

himself at trial or maintained his innocence in his disclosure to the government. *Id.* If the defendant had maintained his innocence, it would be unlikely he would have met his burden to "truthfully provide" all information to the government, and therefore would not have qualified for the safety valve provision. *Id.* If he had admitted he had been involved—thus admitting he had perjured himself at trial—he may have qualified for the safety valve provision, but also would have been exposed to a two-level enhancement for obstruction of justice. *Id.* Either way, the Tenth Circuit determined it could not conclude that the defendant would have faced a lower sentence, and therefore had not shown he was prejudiced.

In a similar case from the Eighth Circuit, the defendant claimed his counsel was ineffective for failing to inform him about the safety valve provision. *See Deltoro-Aguilera*, 625 F.3d at 437. The defendant alleged that despite the fact that he maintained his innocence throughout his trial and sentencing, he would have given a truthful and complete statement to the government had he known about the safety valve. *Id.* The Eighth Circuit rejected the defendant's allegations as conclusions rather than statements of fact and held that they would not accept his allegations as true because "he did no more than state the conclusion that he would have provided the government with truthful information." *Id.* at 438.

The court finds the facts of the present case are on point with the cases from the Tenth and Eighth Circuits. Defendant has not made a showing that he was prejudiced by his attorney's alleged failure to consult with him regarding the safety valve provision. Evidence in the record shows that defendant maintained his innocence throughout the proceeding and testified at trial that he was not involved in the drug conspiracy. He only now claims that had he known about the safety valve, he would have provided information to the government. But he does not explain what information he would have provided. As in *Deltoro-Aguilera*, defendant's allegation is merely conclusory and not supported by any statements

of fact to show his eligibility. And as in *Contreras-Castellanos*, because defendant denied involvement at trial, its unlikely he could show that the safety valve provision would have applied to him.

    *b. Mandatory Minimum Sentence*

Defendant next argues that his attorney was ineffective because he failed to inform him that he was facing a mandatory 10-year minimum sentence, and that had he known of the mandatory minimum sentence he would have accepted a plea deal from the government and not gone to trial.

The Tenth Circuit has found that "a defendant has the right to make a reasonably informed decision whether to accept a plea offer," and that "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *United States v. Washington*, 619 F.3d 1252, 1259–60 (10th Cir. 2010). A defendant can meet the first prong of the *Strickland* test if he can establish that "counsel failed to understand the basic structure and mechanics of the sentencing guidelines and was therefore incapable of helping the defendant to make reasonably informed decisions throughout the criminal process." *Id*. at 1260. To show prejudice under the second prong of *Strickland*, however, a defendant must demonstrate "a reasonable probability they would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 147 (2012). Proof must come from more than "bald, post hoc and unsupported statements." *Heard v. Addison*, 728 F.3d 1170, 1184 (10th Cir. 2013).

Defendant claims that the government offered a plea deal for seven years in prison and that his attorney failed to advise him that he faced a mandatory minimum of 10 years in prison. He insists that "[h]ad I been fully and properly been adviced [sic] of the actual sentence penalties, I would had not rejected the plea offer, and would not had proceeded to trial . . . ." (Doc. 78-1, at 1.) Regardless of whether his attorney had advised him of the 10-year mandatory minimum sentence, defendant had been informed both orally and in writing of the mandatory minimum. The mandatory minimum sentence was

included in both charging documents, and the magistrate judge apprised defendant—through a translator—of the penalties at his initial appearance and arraignment on the superseding indictment. His attorney's alleged failure to make defendant aware of the mandatory ten-year minimum sentence did not prejudice defendant, as he had been informed that a statutory minimum applied. *See United States v. Lichfield*, 499 F. App'x 827, 832 (10th Cir. 2012) (finding counsel's statement that the court could sentence him below the mandatory minimum did not prejudice the defendant when he had been informed both in writing and orally that a statutory mandatory minimum applied); *see also Stevenson v. United States*, No. 3:12-CR-145, 2012 WL 845418, at *24 (M.D. Pa Feb. 21, 2019) (finding that evidence in the record, including the discussion of the penalties associated with the charge at arraignment, showed defendant's understanding of the potential consequences of his decision to reject the plea offer.)

Evidence in the record also shows that defendant was not interested in a plea deal. Defendant's attorney sent an email to the government stating, "I do not expect to have much success any time soon in persuading Alfredo Rodriguez to change his plea . . . . Alfredo insists that Bryant and Moore are lying. I have informed him that federal juries tend to believe such witnesses, even without supporting evidence, but he has not budged. I don't know that he will continue in this vein, but for now he seems adamant." (Doc. 84-1, at 3.) Approximately a month before trial, defendant's attorney followed up with another email stating "[s]o far it looks like Alfredo wants to go to trial. I have no reason to believe at this point that he will change his mind." (Doc. 84-1, at 4.) This evidence discredits defendant's claim that he would have accepted a plea deal had he known about the ten-year minimum sentence.

For these reasons, the court finds defendant has not shown he was prejudiced by his attorney's alleged failure to advise him about the ten-year minimum sentence.

   *c. Trial Errors*

Defendant also argues that his attorney was ineffective during trial because he failed to subpoena the officers/agents who prepared transcripts of phone calls to testify about the information and conclusions contained within the recordings, that he failed to object to or review the transcripts to determine whether they were fair and accurate translations of the dialogues on the recordings, and that he failed to object to the admission of testimonial hearsay contained within the transcripts. He claims that his attorney's failures violate the Confrontation Clause.

Prior to trial, the government and defendant agreed and stipulated to the admission of discs containing the recordings of phone calls that were intercepted by the government. (Doc. 84-2.) Both parties agreed that the government would play the recordings "in a computer-aided format which displays the photograph of the identified speaker and a transcript of the conversation simultaneous with the recording." (Doc. 84-2, at 2.) According to the government, Special Agent Ryan Williams and Detective Jo Daneff testified at trial that they reviewed phone calls and prepared transcripts for exhibits. At trial, defendant's attorney told the court that he had reviewed the transcripts and had no objection, but requested they be admitted for demonstrative purposes only. The court instructed the jury that the transcripts were for demonstrative purposes only, and that if there was a conflict between what was heard and what was read, the jury should rely only on what they heard.

Based on the evidence in the record, the court does not believe defendant has made a showing that defendant's attorney was ineffective or that he was prejudiced in any way by the introduction of the transcripts. Defendant's arguments are mostly refuted by evidence in the record. His attorney stipulated that the government would play the recordings of the calls with a corresponding transcript displayed and told the court that he had reviewed the exhibits before they were introduced at trial. He also requested the transcripts be admitted for demonstrative purposes only. Defendant does not explain why he believes that the outcome of the trial would have been different had his attorney acted any differently in regard

to the transcripts. Further, any objection to the transcripts as hearsay would have been meritless because the court instructed the jury that the transcripts were for demonstrative purposes only. *See United States v. McDaniel*, No. 07-20168-22-JWL, 2013 WL 2449499, at *6 (D. Kan. June 5, 2013) (finding that because the transcripts were "expressly admitted for demonstrative purposes only" and that the court "provided the jury with detailed instructions concerning the purpose of the transcripts and the jury's use of the transcripts," any objection to the use of the transcripts likely would have been meritless.).

Finally, defendant argues that his attorney's errors, viewed cumulatively, require a new trial in his case. A cumulative error analysis "aggregates only actual errors to determine their cumulative effect." *United States v. Rivera*, 900 F.2d 1462, 1470 (10th Cir. 1990). "[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors." *Id.* at 1471. The court has not found that defendant's attorney committed any harmless errors. The court instead has found that defendant has not shown he was prejudiced by any alleged attorney errors. The court therefore does not find there is cumulative error requiring a new trial.

Defendant also filed a motion to compel the government to turn over discovery, specifically the attorney-client visiting log. He claims that he needs this discovery to fully develop the current record. Based on its review of the record and the issues, the court does not believe that any further discovery is necessary to this proceeding. Defendant's request is therefore denied.

Rule 11 of the Rules Governing Section 2255 Proceedings directs the court to issue or deny a certificate of appealability when it issues a final adverse order. A certificate of appealability is not warranted in this case because reasonable jurists could not debate whether the motion "should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation omitted).

**IT IS THEREFORE ORDERED** that defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person In Federal Custody (Doc. 78) is denied

**IT IS FURTHER ORDERED** that defendant's Petition to Compel the Government to Provide Discovery Under Rules (A) of and the Rules Governing § 2255 Proceedings (Doc. 86) is denied.

**IT IS FURTHER ORDERED** that a certificate of appealability is denied.

Dated April 25, 2019, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**